(26 P.3d 1279)
No. 85,978

In the Matter of the Application of Johnson County Housing Coalition, Inc. For Exemption from Ad Valorem Taxation in Johnson County, Kansas.

Opinion filed June 15, 2001.

*Eldon J. Shields*, of Gates, Biles, Shields & Ryan, P.A., of Overland Park, for the appellant.

*Kathryn D. Myers*, assistant county counselor, of Olathe, for the appellee.

Before PIERRON, P.J., GREEN and BEIER, JJ.

*Per Curiam:* The Johnson County Housing Coalition (JCHC) appeals from the Board of Tax Appeal's (BOTA) denial of its application requesting an exemption from ad valorem taxes. We affirm.

JCHC was organized as a nonprofit, § 501(c)(3) corporation in the State of Kansas. It is a State-recognized nonprofit community housing development organization whose stated purpose is to provide low income persons, handicapped persons, elderly persons, and persons with special needs with housing facilities and services.

JCHC filed an application for exemption from ad valorem taxation for a residential apartment complex consisting of 5 structures totalling 40 living units. The property was acquired by JCHC on January 31, 2000, and JCHC applied for the exemption under K.S.A. 2000 Supp. 79-201b *Fourth, Fifth*, and *Sixth*. The apartment complex is used predominately as low income housing, housing for the disabled, and housing for handicapped persons. The Johnson County appraiser (County) recommended the exemption be granted.

BOTA determined the applicable statutes were K.S.A. 2000 Supp. 79-201b *Fourth* and K.S.A. 2000 Supp. 79-201 *Ninth*. In the

order, BOTA found that as of June 2000, 23 of the 40 units appeared not to be rented by low income, elderly, or handicapped persons. It also found JCHC did not use the subject property exclusively for housing the elderly, handicapped persons, or persons with limited or lower income pursuant to K.S.A. 2000 Supp. 79-201b *Fourth* and the property was not used predominately for humanitarian purposes pursuant to K.S.A. 2000 Supp. 79-201 *Ninth*. In addition, BOTA noted that K.S.A. 2000 Supp. 79-201b *Fourth* was a more specific statute addressing property operated under United States Department of Housing and Urban Development guidelines and, as such, should be the statute applied to the subject property. BOTA denied the exemption.

In its petition for reconsideration, JCHC clarified that 35 of the 37 habitable units were rented to low income households. The other two units included one unit where the tenant was simply delinquent in reporting income and one unit in which an eviction was pending. The three remaining units were being renovated, used for storage, or for the management office.

In its order denying JCHC's petition for reconsideration, BOTA reiterated K.S.A. 2000 Supp. 79-201b *Fourth* still controlled as it was the most specific statute addressing real property. BOTA then found JCHC had not demonstrated it had satisfied the requirements of K.S.A. 2000 Supp. 79-201b *Fourth*. There was no evidence JCHC used the property exclusively for cooperative housing for persons having limited or low income and operated the property pursuant to Sections 236 or 221(d)(3) of the national housing act. BOTA also stated the evidence did not show the property was used exclusively for elderly and handicapped persons having a limited or low income.

On appeal, JCHC argues BOTA erred in its determination that K.S.A. 2000 Supp. 79-201b *Fourth* applied and asserts that K.S.A. 2000 Supp. 79-201 *Ninth* is the applicable statute and that the exemption should be granted accordingly. This issue involves the interpretation of statutes. The County contends BOTA was correct in finding K.S.A. 2000 Supp. 79-201b *Fourth* applied but asserts BOTA erred in denying the exemption pursuant to that statute. The County, however, did not cross-appeal.

"The interpretation of a statute by an administrative agency charged with the responsibility of enforcing a statute is entitled to judicial deference and is called the doctrine of operative construction. Deference to an agency's interpretation is particularly appropriate when the agency is one of special competence and experience. Although an appellate court gives deference to the agency's interpretation of a statute, the final construction of a statute lies with the appellate court, and the agency's interpretation, while persuasive, is not binding on the court. Interpretation of a statute is a question of law over which an appellate court's review is unlimited. [Citation omitted.]" *In re Appeal of United Teleservices, Inc.*, 267 Kan. 570, 572, 983 P.2d 250 (1999).

JCHC candidly concedes the subject property does not fall within the exemption created by K.S.A. 2000 Supp. 79-201b *Fourth*. The statute reads:

"The following described property, to the extent herein specified, shall be and is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

. . . .

"*Fourth*. All real property and tangible personal property, actually and regularly used exclusively for housing for elderly and handicapped persons having a limited or lower income, or used exclusively for cooperative housing for persons having a limited or low income, assistance for the financing of which was received under 12 U.S.C.A. 1701 *et seq.*, or under 42 U.S.C.A. 1437 *et seq.*, which is operated by a corporation organized not for profit under the laws of the state of Kansas or by a corporation organized not for profit under the laws of another state and duly admitted to engage in business in this state as a foreign, not-for-profit corporation; and all intangible property including moneys, notes and other evidences of debt, and the income therefrom, belonging exclusively to such a corporation and used exclusively for the purposes of such housing. For the purposes of this subsection, cooperative housing shall mean those not-for-profit cooperative housing projects operating pursuant to sections 236 or 221(d)(3), or both, of the national housing act and which have been approved as a cooperative housing project pursuant to applicable federal housing administration and U.S. Department of Housing and Urban Development statutes, and rules and regulations, during such time as the use of such properties are restricted pursuant to such act, statutes or rules and regulations."

Clearly, the subject property is not used exclusively as housing for elderly and handicapped persons having a limited or lower income. There is also no evidence the property is used exclusively for cooperative housing as defined in the aforementioned statute. This much is admitted by JCHC. However, JCHC contends the

subject property falls within the exemption created by K.S.A. 2000 Supp. 79-201 *Ninth*. It reads:

"The following described property, to the extent herein specified, shall be and is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

. . . .

"*Ninth*. All real property and tangible personal property actually and regularly used by a community service organization for the predominant purpose of providing humanitarian services, which is owned and operated by a corporation organized not for profit under the laws of the state of Kansas or by a corporation organized not for profit under the laws of another state and duly admitted to engage in business in this state as a foreign not-for-profit corporation if: (a) The directors of such corporation serve without pay for such services; (b) the corporation is operated in a manner which does not result in the accrual of distributable profits, realization of private gain resulting from the payment of compensation in excess of a reasonable allowance for salary or other compensation for services rendered or the realization of any other form of private gain; (c) no officer, director or member of such corporation has any pecuniary interest in the property for which exemption is claimed; (d) the corporation is organized for the purpose of providing humanitarian services; (e) the actual use of property for which an exemption is claimed must be substantially and predominantly related to the purpose of providing humanitarian services, except that, the use of such property for a nonexempt purpose which is minimal in scope and insubstantial in nature shall not result in the loss of exemption if such use is incidental to the purpose of providing humanitarian services by the corporation; (f) the corporation is exempt from federal income taxation pursuant to section 501(c)(3) of the internal revenue code of 1986 and; (g) contributions to the corporation are deductible under the Kansas income tax act. As used in this clause, 'humanitarian services' means the conduct of activities which substantially and predominantly meet a demonstrated community need and which improve the physical, mental, social, cultural or spiritual welfare of others or the relief, comfort or assistance of persons in distress or any combination thereof including but not limited to health and recreation services, child care, individual and family counseling, employment and training programs for handicapped persons and meals or feeding programs. Notwithstanding any other provision of this clause, motor vehicles shall not be exempt hereunder unless such vehicles are exclusively used for the purposes described therein."

This court must determine the applicable statute: K.S.A. 2000 Supp. 79-201b *Fourth* or K.S.A. 2000 Supp. 79-201 *Ninth*.

When reviewing decisions made by BOTA, certain guidelines and legal principles have been developed by the courts. Taxation is the rule; exemption is the exception. Any doubts are to be resolved against the exemption and in favor of taxation. The burden

of establishing exemption from taxation is on the one claiming it. *In re Tax Exemption Application of Via Christi Regional Med. Ctr.*, 27 Kan. App. 2d 446, 447, 6 P.3d 896 (2000). Tax exemption statutes are to be construed strictly in favor of imposing the tax and against allowing the exemption for one who does not clearly qualify. *Presbyterian Manors, Inc. v. Douglas County*, 268 Kan. 488, 492, 998 P.2d 88 (2000).

BOTA ruled K.S.A. 2000 Supp. 79-201b *Fourth* controlled over K.S.A. 2000 Supp. 79-201 *Ninth* because it is the most specific statute addressing residential property. K.S.A. 2000 Supp. 79-201b *Fourth* specifically deals with exemptions of low income housing while K.S.A. 2000 Supp. 79-201 *Ninth* is a more general statute that deals with property used for the predominant purpose of providing humanitarian services. General and specific statutes should be read together and harmonized whenever possible. "[T]he rule is that to the extent they conflict, the special statute will prevail unless it appears the legislature intended the general statute to be controlling." *Wilkerson v. Brown*, 26 Kan. App. 2d 831, 834-35, 995 P.2d 393, *rev. denied* 269 Kan. 941 (2000).

If K.S.A. 2000 Supp. 79-201 *Ninth* controlled, there would be virtually no purpose for any section of K.S.A. 2000 Supp. 79-201b. All exemptions listed in K.S.A. 2000 Supp. 79-201b can necessarily be classified as humanitarian activities. When a conflict exists between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless the legislature intended to make the general act controlling. *In re L.D.B.*, 22 Kan. App. 2d 821, 824-25, 924 P.2d 642 (1996). K.S.A. 2000 Supp. 79-201 *Ninth* deals generally with providing humanitarian services while K.S.A. 2000 Supp. 79-201b *Fourth* refers specifically to low income residential housing.

Legislative history makes it clear the legislature did not intend K.S.A. 2000 Supp. 79-201 *Ninth* to control over K.S.A. 2000 Supp. 79-201b *Fourth* in cases such as this. K.S.A. 2000 Supp. 79-201 *Ninth* was adopted largely in response to a BOTA decision which required the subject property be used "exclusively" for charitable, educational, scientific, or religious purposes. House Bill 2651 expansively defined the term "humanitarian services" in response and

in contrast to the narrow interpretation of the term "charitable and benevolent purposes" as used in K.S.A. 2000 Supp. 79-201 *Second* adopted by the Supreme Court in *Lutheran Home, Inc., v. Board of County Commissioners*, 211 Kan. 270, ¶¶ 6-7, 505 P.2d 1118 (1973). K.S.A. 2000 Supp. 79-201 *Ninth* also eliminated the language about "investment income" that had been included in K.S.A. 2000 Supp. 79-201 *Second* and abandoned the "exclusive use" requirement of earlier exemptions in favor of the provision the property be used for the "predominant purpose" of providing humanitarian services. *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. 737, 756-57, 973 P.2d 176 (1999).

As evidenced by case law and the plain reading of the statute, K.S.A. 2000 Supp. 79-201 *Ninth* was not designed to govern residential housing facilities. The nonexclusive list of activities classified as "humanitarian services" in the statute include health and recreation services, child care, counseling, employment and training programs for handicapped persons, and meals or feeding programs. Existing case law applying this subsection reinforces this position. See *Via Christi Regional Med. Ctr.,* 27 Kan. App. 2d 446 (health care facility); *Univ. of Kan. School of Medicine,* 266 Kan. 737 (health care facility); *9200 Santa Fe Corp. v. Board of Johnson County Comm'rs*, 19 Kan. App. 2d 91, 864 P.2d 742 (1993) (YWCA building provided community services such as child care, teenage job readiness programs, and programs for child fitness).

K.S.A. 2000 Supp. 79-201 governs service-oriented facilities including religious, educational, literary, scientific, benevolent, charitable, or alumni associations or institutions; veterans' organizations; parsonages; and community service organizations providing humanitarian services. Here, the subject property is a residential housing complex. K.S.A. 2000 Supp. 79-201b governs housing facilities. K.S.A. 2000 Supp. 79-201b *Fourth* is a more specific statute and is applicable to the facts of this case.

Affirmed.