(301 P.3d 355)
No. 108,116

In the Matter of the Application of TRANSCANADA KEYSTONE PIPELINE, L.P. for Exemption from Ad Valorem Taxation.

Opinion filed April 26, 2013.

*William E. Waters*, of Division of Property Valuation, Kansas Department of Revenue, for appellant.

*Richard V. Eckert*, county counselor, for *amicus curiae* Kansas Association of Counties.

*S. Lucky DeFries*, of Coffman, DeFries & Nothern, A Professional Association, of Topeka, and, *John R. Haug* and *Rachel H. Milazzo*, pro hac vice, of SNR Denton US LLP, of St. Louis, Missouri, for appellee.

Before PIERRON, P.J., BRUNS and POWELL, JJ.

BRUNS, J.: TransCanada Keystone Pipeline, L.P. (Keystone) applied for a tax exemption under K.S.A. 2010 Supp. 79-227 for a portion of its pipeline known as the Cushing Extension. This portion of the pipeline transports Canadian crude oil through Kansas to a terminal located in Cushing, Oklahoma. Although it is undisputed that Kansas refineries have access to the Canadian crude oil by means of existing pipelines that connect to the Cushing terminal, the Director of Property Valuation (Director) recommended denying the application because refineries do not have direct access to the pipeline in this state. The Court of Tax Appeals (COTA) granted summary judgment in favor of Keystone, finding that the plain language of K.S.A. 2010 Supp. 79-32,223(d)—which defines the term "qualifying pipeline"—does not require Kansas refineries to have a direct connection to the Cushing Extension within the boundaries of Kansas. Because we also find that the plain and unambiguous language of K.S.A. 2010 Supp. 79-32,223(d) does not require that Kansas refineries have direct access to the Cushing Extension in Kansas, we affirm the COTA's decision.

## FACTS

The material facts of this case are not in dispute. Keystone is a limited partnership authorized to do business in the state of Kansas. The partnership is engaged in the business of constructing and/or operating pipelines for the transportation of oil and natural gas. In February 2005, Keystone announced plans to construct a 2,148-mile pipeline—known as the "Mainline"—from Alberta, Canada, to Illinois. Ultimately, the Mainline is to pass through the states of

North Dakota, South Dakota, Nebraska, Kansas, Missouri, and Illinois.

The Cushing Extension—which is the portion of the pipeline project at issue in this case—begins in Steele City, Nebraska, traverses Kansas for approximately 210 miles, and ends at an oil terminal in Cushing, Oklahoma. The Cushing terminal is one of the largest crude oil storage and pipeline hubs in the United States. Keystone first proposed the Cushing Extension in late 2005, and it began to examine the possibility in earnest during early 2006. At the same time, the Kansas Legislature was considering whether to provide income tax credits and property tax exemptions to encourage new qualifying pipeline projects.

In June 2006, the Kansas Legislature passed the Kansas Energy Development Act (the Act), L. 2006, ch. 209. As part of the Act, K.S.A. 2010 Supp. 79-227 provides a 10-year property tax exemption for "new qualifying pipeline property" constructed after December 31, 2005. K.S.A. 2010 Supp. 79-32,223(d) defines "qualifying pipeline" to mean "a pipeline which is located in this state, is used primarily for transportation of crude oil or natural gas liquids and has a length of more than 190 miles in this state and to which refineries or natural gas liquid processing facilities in this state have access."

On July 3, 2007, after securing contracts for an additional 155,000 barrels of Canadian crude oil per day, Keystone announced its decision to move forward with plans to construct the Cushing Extension through Kansas. Construction began on the project in the spring of 2010, and the Cushing Extension began commercial operation in February 2011. The pipeline, which passes through Washington, Marion, Dickinson, Cowley, Clay, and Butler counties, delivers approximately 156,000 barrels of crude oil each day from Steele City, Nebraska, to Cushing, Oklahoma. It is undisputed that all three Kansas refineries have access to the crude oil by means of existing pipelines that connect with the Cushing terminal.

On October 17, 2008, Keystone filed an initial request for a property tax exemption as required by K.S.A. 2010 Supp. 79-213. The then Director of Property Valuation, Mark S. Beck, issued a

written recommendation on October 29, 2010, recommending the denial of Keystone's request for a property tax exemption. Specifically, the Director noted that "[a]lthough refineries in this state have access to crude oil being transported into Cushing, Oklahoma via the subject pipeline, no evidence has been submitted establishing that they have access to a 'pipeline which is located in this state.'" The Director recognized, however, that the issue required interpretation of K.S.A. 2010 Supp. 79-227 and K.S.A. 2010 Supp. 79-32,223 by COTA.

After the Director made his written recommendation, Keystone's application for exemption was filed with COTA on November 1, 2010. At the same time, the parties filed a joint statement of stipulated facts. Subsequently, Keystone and the Director filed motions for summary judgment. Both parties recognized that the issue of whether Keystone is entitled to a property tax exemption involves statutory interpretation, which is a question of law subject to de novo review.

COTA granted summary judgment to Keystone on April 13, 2012, finding that "the refinery access requirement of K.S.A. 79-32,223(d) is susceptible of but one reasonable meaning and is, therefore, unambiguous." Further, COTA rejected the Director's argument, concluding that "[t]he statute requires no direct connection and no particular means of access. Nor does the statute require that access be established at any particular location or proximity to refineries in Kansas."

One member of COTA wrote a concurring opinion expressing his concern that K.S.A. 2010 Supp. 79-32,223(d) may not effectuate the legislature's purpose for granting the tax exemption and suggesting that the legislature may desire to revise the statute to clarify its intention. Nevertheless, the judge concurred "with the majority that K.S.A. 79-32,223(d) is clear and unambiguous." Accordingly, the concurring judge agreed "with the majority's decision to grant the applicant's request for [a] tax exemption."

The Director subsequently filed a motion for reconsideration, which was denied in a unanimous order entered on May 16, 2012. In denying the motion, COTA noted that the Director had "stipulated that '[a]ll three Kansas refineries . . . will have access to the

[Keystone] crude oil by means of existing pipelines that connect with the Cushing terminal.' " Likewise, COTA found that "[t]he technical mechanics, engineering and logistics of how oil is moved through the apparatus at the Cushing hub and ultimately conveyed to refineries in Kansas is not material to our analysis."

## ANALYSIS

### Issue Presented

On appeal, the sole issue presented is whether COTA erred in concluding that Keystone is entitled to a property tax exemption for the Cushing Extension under K.S.A. 2010 Supp. 79-227 and K.S.A. 2010 Supp. 79-32,223(d).

### Standard of Review

We review COTA decisions under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.* Under the KJRA, the burden of proving the invalidity of COTA's action rests on the party asserting invalidity. See K.S.A. 2010 Supp. 77-621(a)(1). Although judicial review is strictly limited by the KJRA, the issue on appeal involves statutory interpretation, which is a question of law. See K.S.A. 2010 Supp. 77-621(c)(4). As such, our review of the COTA's decision is unlimited. See *In re Tax Appeal of LaFarge Midwest*, 293 Kan. 1039, 1043, 271 P.3d 732 (2012).

In interpreting a statute, the intent of the legislature governs. See *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). When the plain language of a statute is unambiguous, we are to give effect to that language without resorting to principles of statutory construction or legislative history. See *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271-72, 202 P.3d 7 (2009). Because the statutes to be interpreted in this case involve exemptions from taxation, we must construe them strictly against the party claiming the exemption. See *In re Tax Exemption Application of Mental Health Ass'n of the Heartland*, 289 Kan. 1209, 1211, 221 P.3d 580 (2009). "Strict construction, however, does not warrant unreasonable construction." *In re Tax Application of Lietz Constr. Co.*, 273 Kan. 890, 905, 47 P.3d 1275 (2002).

*K.S.A. 2010 Supp. 79-227 and K.S.A. 2010 Supp. 79-32,223(d)*

K.S.A. 2010 Supp. 79-227 provides:

"(a) The following described property, to the extent herein specified, shall be exempt from all property taxes levied under the laws of the state of Kansas: Any new qualifying pipeline property.

"(b) The provisions of subsection (a) shall apply from and after purchase or commencement of construction or installation of such property and for the 10 taxable years immediately following the taxable year in which construction or installation of such property is completed.

"(c) The provisions of this section shall apply to all taxable years commencing after December 31, 2005.

"(d) As used in this section:

(1) 'New qualifying pipeline property' means any real or tangible personal property purchased, constructed or installed for incorporation in and use as part of a new qualifying pipeline, construction of which begins after December 31, 2005.

(2) 'Qualifying pipeline' has the meaning provided by K.S.A. 2010 Supp. 79-32,223, and amendments thereto."

K.S.A. 2010 Supp. 79-32,223(d) defines "qualifying pipeline" as follows:

" 'Qualifying pipeline' means a pipeline which is located in this state, is used primarily for transportation of crude oil or natural gas liquids and has a length of more than 190 miles in this state and to which refineries or natural gas liquid processing facilities in this state have access."

*Application of K.S.A. 2010 Supp. 79-227 and K.S.A. 2010 Supp. 79-32,223(d)*

It is undisputed that if the Cushing Extension is a "qualifying pipeline" as defined in K.S.A. 2010 Supp. 79-32,223(d), Keystone is entitled to a property tax exemption under K.S.A. 2010 Supp. 79-227 for the 10 taxable years following completion of the pipeline. Likewise, the parties agree that there are no genuine issues of material fact presented in this case. Rather, the dispute between the parties is over the interpretation of K.S.A. 2010 Supp. 79-32,223(d). Although both parties agree that the statute is unambiguous, their interpretation of its meaning differs dramatically.

According to the joint stipulation of the parties, "the primary purpose of the Cushing Extension is the transportation of crude oil" and it is "more than 190 miles in length in the State of Kansas."

Moreover, the parties have stipulated that "[a]ll three Kansas refineries . . . will have *access to the crude oil* by means of existing pipelines that connect with the Cushing terminal." (Emphasis added.) Keystone contends—and COTA agrees—that this access is sufficient to justify a property tax exemption under K.S.A. 2010 Supp. 79-227. On the other hand, the Director contends that there must be direct access to the pipeline within the boundaries of Kansas to justify an exemption.

The Director concedes that Keystone has met the first three statutory requirements for a "qualifying pipeline" under K.S.A. 2010 Supp. 79-32,223(d). In particular, the Director agrees that the Cushing Extension is a pipeline that primarily transports crude oil and has a length of more than 190 miles in Kansas. But the Director asserts that Keystone has failed to meet the fourth statutory requirement for a "qualifying pipeline" because it has not shown that Kansas refineries have access to the pipeline within the boundaries of the State of Kansas.

We note that the legislature included the "in this state" language immediately following three of the four requirements for a "qualifying pipeline" under K.S.A. 2010 Supp. 79-32,223(d). Clearly, to meet the statutory requirements, the pipeline must be located *in this state*, at least 190 miles of the pipeline must be *in this state*, and refineries and natural gas liquid processing facilities *in this state* must have access. But notably missing from the statute is similar *in this state* language following the word "access." We find this omission to be significant because the legislature obviously knew how to make an *in this state* requirement. See *Richards v. Schmidt*, 274 Kan. 753, 758, 56 P.3d 274 (2002) ("So long as it does not work to defeat clear legislative intent to the contrary, under the doctrine of *expressio unius est exclusio alterius*, we are to presume that when legislation expressly includes specific terms, it also intends to exclude those items not listed."). Accordingly, we find that it is unlikely that the legislature's omission of an *in this state* requirement following the word "access" was a mistake.

Even if we were to assume that the omission was a mistake by the legislature, it is simply not the role of courts to rewrite statutes—in particular those in which the parties agree are unambig-

uous. See *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs*, 290 Kan. 446, 464-65, 228 P.3d 403 (2010). Furthermore, " '[t]ax statutes . . . should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it.' " *In re Tax Appeal of McKee*, 19 Kan. App. 2d 43, 49, 861 P.2d 1386 (1993) (quoting *In re Tax Appeal of Atcheson, Topeka & Santa Fe Ry. Co.*, 17 Kan. App. 2d 794, Syl. ¶ 5, 844 P.2d 756 [1993]). Here, only the legislature can add a requirement that Kansas refineries must have access to a "qualifying pipeline" in this state.

Hence, the plain and unambiguous language of the statute requires that Kansas refineries have access to a "qualifying pipeline" transporting crude oil or natural gas liquids. The word "access" is defined as "[a] means of approaching, entering, exiting, communicating with, or making use of." The American Heritage Dictionary 10 (4th ed. 2006). And the Kansas Supreme Court has defined "access," albeit in other contexts, as the " 'freedom or ability to obtain or make use of.' " *State v. Allen*, 260 Kan. 107, 114, 917 P.2d 848 (1996) (citing Webster's New Collegiate Dictionary, 7 [1977]). Here, as the parties have stipulated, "Kansas refineries . . . will have *access* to the crude oil [flowing through the Cushing Extension] by means of existing pipelines that connect with the Cushing terminal." In other words, the existing pipelines provide Kansas refineries a means of approaching and making use of the Cushing Extension to obtain crude oil.

The Director claims that the access requirement is meaningless if it permits an access point to a pipeline to be outside of the boundaries of Kansas. See *State ex rel. Tomasic v. City of Kansas City*, 237 Kan. 572, Syl. ¶ 3, 701 P.2d 1314 (1985) (holding that tax exemptions must "have a public purpose and promote the general welfare"). But even if the access point to a pipeline is outside this state, K.S.A. 2010 Supp. 79-32,223(d) serves a public purpose. The statute requires that those seeking the benefit of a property tax exemption provide Kansas refineries or natural gas liquid processing facilities the opportunity to make use of the crude oil or natural gas liquid that flows through the "qualifying pipeline" constructed or installed in the State of Kansas. Although requiring a

direct connection to a "qualifying pipeline" by Kansas refineries would arguably benefit Kansans more, this is a question for the legislature and not for the courts. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 348, 277 P.3d 1062 (2012) ("[T]he legislature, unlike the judiciary, is one of the branches of government charged with development of public policy on behalf of the electorate . . . .").

CONCLUSION

Applying a strict and reasonable interpretation of the plain language of K.S.A. 2010 Supp. 79-32,223(d), we find as a matter of law that direct access to a pipeline within the boundaries of Kansas is not required. To find otherwise would require us to rewrite the statute, which we have no authority to do. We, therefore, conclude that COTA properly granted Keystone's application for a property tax exemption for the Cushing Extension under K.S.A. 2010 Supp. 77-227.

Affirmed.